UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| LARRY SHIDLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 2:05-CV-209 CAN |
| | ) | |
| CVS PHARMACY INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On November 30, 2006, Defendant Hook-SupeRx, Inc.,(SupeRx)[1], filed a motion for summary judgment.  On that same day, Shidler filed his response and SupeRx filed its reply.  For the following reasons, SupeRx's motion for summary judgment is **GRANTED** [Doc. No. 38].

**I.   PROCEDURAL HISTORY**

On May 23, 2005, Plaintiff Larry Shidler, as executor of the estate of his deceased wife Geneva Shidler, filed a complaint in this Court.  Shidler seeks damages based on the wrongful death of his wife.  On July 11, 2005, this case was reassigned to Magistrate Judge Paul Cherry based upon the consent of the parties, and on August 30, 2005, this case was transferred from the Hammond Division to the South Bend Division. Upon transfer, the undersigned became the presiding judge in this case.

On November 30, 2006, SupeRx filed a motion for summary judgment.  On that same day, Shidler filed a response and SupeRx filed a reply.  This Court may rule upon this motion pursuant to the parties consent and 28 U.S.C. § 636(c)(1).

**II.   ANALYSIS**

---

[1] The Defendant, Hook-SupeRx, Inc., was improperly pled as CVS Pharmacy, Inc.

A.  Facts

Geneva Shidler was the wife of Larry Shidler. (Deposition of Larry Shidler 5). On May 23, 2003, Geneva Shidler fell at home and was taken to the emergency room of Pulaski Memorial Hospital in Winamac, Indiana, because she seemed out of breath and because she was very tired. (Deposition of Karen Wolfe 25-26). Geneva Shidler was admitted for treatment, and the next day, Dr. Che-Lu Tseng (Dr. Tseng) diagnosed her as having an underactive thyroid. (Deposition of Dr. Che-Lu Tseng 29-30). Dr. Tseng wrote a prescription for 2.5 milligrams of Synthroid. (Id.) However, Dr. Tseng later admitted that he mis-wrote the prescription, and that he meant to write the prescription for 25 micrograms of Synthroid. (Id. 30). The actual prescription Dr. Tseng wrote, 2.5 milligrams, was the equivalent of 250 micrograms, a larger dose then Dr. Tseng intended. (Id.).

On May 25, 2003, Geneva Shidler's daughter, Karen Wolfe (Wolfe), went to a CVS pharmacy in Winamac, Indiana, to fill the prescription written by Dr. Tseng. (Wolfe Dep. 29-30). Wolfe presented the Synthroid prescription to Gregory Holt (Holt), a pharmacist at the CVS store in Winamac. (Id.). Holt told Wolfe that the dosage appeared high for somebody that was taking Synthroid for the first time. (Id.). Holt also noticed that the CVS computer flagged the prescription as exceeding the recommended quantity when he had filled the prescription. (Deposition of Gregory Holt 6). However, Holt had given this size prescription before many times and he did not consider it to be a poisonous dose. (Id. 7). Holt filled the prescription and gave it to Wolfe. (Wolfe Dep. 29-30).[2]

---

[2] One of the factual disputes is whether Holt called Dr. Tseng to verify the prescription strength. Because this Court is to look at all factual disputes most favorably for the Plaintiff, as the non-moving party, this Court will assume that Holt did not call Dr. Tseng.

After Geneva Shilder began taking the Synthroid, she began to experience problems. (Id. at 31-36). Her family had to help her get to bed, to get out of bed, and to go to the bathroom. (Id.). She acted very tired and she was sleeping an unusually large amount. (Id.). For several days, Geneva Shidler's family attempted to contact Dr. Tseng. (Id. 34-35). On May 29, 2006, Dr. Tseng finally contacted the family and inquired as to the Synthroid prescription. (Id. 36). Upon seeing the bottle, Dr. Tseng indicated he had written the wrong prescription, and he scratched out the prescription and wrote one half. (Id.). Geneva Shilder's symptoms and condition did not improve over the next several days, and she eventually died on June 2, 2003. (Shidler Dep. 32).

B.   Standard of Review

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Lawson v. CSX Transp., Inc., 245 F.3d 916, 922 (7th Cir. 2001). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the nonmoving party as well to draw all reasonable and justifiable inferences in favor of that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); King v. Preferred Technical Group, 166 F.3d 887, 890 (7th Cir. 1999). To overcome a motion for summary judgment, the non-moving party cannot rest on the mere allegations or denials contained in its pleadings. Rather, the non-moving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1088 (7th Cir.

3

2000).  Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Bank of Ariz. v. Cities Services Co., 391 U.S. 253, 289 (1968)).

      C.     SupeRx's Motion for Summary Judgment

Shidler's cause of action for wrongful death is based on negligence.  It is basic tort law that in a negligence case a plaintiff must establish four elements: 1) that the defendant owed the plaintiff a duty, 2) that the defendant breached its duty, 3) that the plaintiff suffered damages and 4) that the defendant's breach of its duty caused the plaintiff's damages.  Morgan v. Tackitt Ins. Agency, Inc., 852 N.E.2d 994, 998 (Ind. Ct. App. 2006); Musser v. Gen. Health Serv.s, 356 F.3d 751, 760 (7th Cir. 2004) (citing Whyde v. Czarkowski, 659 N.E.2d 625, 627 (Ind. Ct. App. 1995)).  Without a duty to act or not act, there can be no recovery in negligence.  "Whether the law recognizes any obligation on the part of a particular defendant to conform his conduct to a certain standard for the benefit of the plaintiff is a question of law exclusively for the court."  Hooks SupeRx, Inc. v. McLaughlin, 642 N.E.2d 514, 517 (Ind. 1994).

SupeRx argues that Shidler has alleged a "duty to warn" case much like Ingram v. Hook's Drugs, Inc., 476 N.E.2d 881 (Ind. Ct. App. 4th Dist.).  Neither Shidler or this Court agree with SupeRx's characterization. Rather, Shidler argues that the SupeRx pharmacist failed to act as a "reasonable" pharmacist should have acted.  Shidler suggests that a "reasonable" pharmacist would have checked with the doctor that wrote the prescription, or would have done more research on the prescription strength, or he should have simply denied to fill the prescription in the patient's best interest.

4

Under Indiana law, the SupeRx pharmacist owed Shidler a duty of reasonable care. Ind. Code § 25-26-13-16(a) provides, "[a] pharmacist shall exercise his professional judgment in the best interest of the patient's health when engaging in the practice of pharmacy." Furthermore, the Indiana Supreme Court explicitly recognized a duty exists between pharmacists and the public, and that "pharmacists must exercise that degree of care that an ordinarily prudent pharmacist would under the same or similar circumstances." Hooks SupeRx, 642 N.E.2d at 519. Therefore, the SupeRx pharmacist owed Shidler a duty to exercise reasonable care.

Even though Indiana recognizes that SupeRx owes Shidler a duty of reasonable care, Shidler must do more to survive a motion for summary judgment. Specifically, to survive a motion for summary judgment Shidler must define the duty of reasonable care and show how SupeRx breached its duty. However, Shidler has failed to offer the expert testimony of a pharmacist to establish what the applicable standard of care is for a pharmacist and how SuperRx failed to meet this standard of care. In order for the jury to know if a professional has complied with the applicable standard of care, a party must present expert testimony establishing that standard of care. Troutwine Estates Dev. Co. v. Comsub Design and Eng'g, 854 N.E.2d 890, 902 (Ind. Ct. App. 2006). And, although the question of whether a pharmacist used "due care in a particular case will depend upon the circumstances of that case and will usually be a question of fact" under Hooks SupeRx, 642 N.E.2d at 519, Shidler must still present expert testimony to establish that a genuine issue of fact exists as to whether the appropriate standard of care was followed. Whyde v. Czarkowski, 659 N.E.2d 625, 628 (Ind. Ct. App. 1995). Without expert testimony, there is simply no measuring stick for which the jury can properly analyze any factual disputes about the appropriate standard of care. See Bassett v. Glock, 368 N.E.2d 19, 23 (Ind.

5

App. 1977) ("This is not to say that the ultimate issue for resolution . . . rests within the exclusive domain of expert witnesses.  It is only to say that before the trier of fact may confront the factual question the issue must be presented and placed in controversy by reference to expert opinion.").  Therefore, to survive summary judgment Shidler must present expert testimony regarding the standard of care of a pharmacist, which would allow a reasonable jury to conclude that the SupeRx pharmacist's conduct fell below the applicable standard of care.  Celotex, 477 U.S. at 322-23;  Robin, 200 F.3d at 1088.  The issue this Court must resolve is whether the expert Shidler has proffered is sufficient to meet his burden.

        1.     Shidler's Expert

Shidler has designated only one expert, Michael M. Ramsey, M.D. (Dr. Ramsey), to support his theory. If Dr. Ramsey is an appropriate expert to testify regarding the standard of care of a pharmacist, Shidler might survive summary judgment.  So the threshold question for this Court is whether Dr. Ramsey is an appropriate expert.

A district court must act as a "gatekeeper" to ensure that any and all expert testimony or evidence admitted is not only relevant but reliable. Ramsey v. Consolidated Rail Corp. 111 F.Supp.2d 1030, 1036 (N.D. Ind. 2000).  It is not the responsibility of the trial court to determine whether the expert's opinion is correct.  Smith, 215 F.3d at 719.  The factual underpinnings of the analysis and the correctness of the conclusions are matters to be determined by the trier of fact.  Id. at 718.

The precise question is whether Dr. Ramsey is sufficiently qualified as an expert to testify about the standard of care of a pharmacist.  While Dr. Ramsey is knowledgeable of and has significant experience in the medical field, he does not indicate he has any knowledge about

the pharmaceutical profession. Dr. Ramsey is not a pharmacist, he has not had any pharmaceutical training, and he does not indicate any other expertise in pharmaceuticals. The closest opinion Dr. Ramsey has about pharmacy is where he indicates, "[s]he was prescribed an excessive initial dose of synthroid which was approximately ten (10) times the usual prescribed dose for a patient with preexisting cardiac disease. . . . The majority of reference books and treatises belabor the importance of a low and carefully controlled replacement thyroid hormone." (Ramsey Aff. ¶ 3). However, no where in this opinion, or the rest of his opinions, does Dr. Ramsey offer what a pharmacist should do when filling a prescription, when a pharmacist should question or reject filling a prescription, or when a pharmacist should double check with a physician about a prescription. Simply put, Dr. Ramsey's opinion reveals insufficient knowledge about pharmacy. As a result, this Court cannot say that Dr. Ramsey relied on sufficient facts and data to testify as an expert in pharmaceuticals or as an expert in the pharmacy profession.[3] Under F.R.E. 702 and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), Dr. Ramsey is not qualified as an expert to testify about the appropriate standard of care for a pharmacist.

       2.    <u>The Need for Expert Testimony</u>

Even though Shidler has failed to present any expert testimony regarding the standard of care for a pharmacist, Shidler argues that Indiana law does not require expert testimony to show the applicable standard of care for a pharmacist. Shidler also contends that Indiana requires

---

[3]This Court is not finding that Dr. Ramsey an improper expert to all issues. Simply that he is not an expert for the standard of care of pharmacists. He may be able to be a proper expert for medical purposes or for the purposes of causation. But, this Court is not opining on such matters at this time.

expert testimony to establish the standard of care for a physician, but not for a pharmacist. This Court does not agree.

While there may not be authority that explicitly requires expert testimony to establish the standard of care for a pharmacist, Indiana generally has required expert testimony to establish the standard of care of any profession. Troutwine Estates Dev. Co.,854 N.E.2d at 902; see also Masick v. McColly Realtors, Inc., 858 N.E.2d 682 (Ind. Ct. App. 2006) (standard of care for broker should be elicited by expert of the profession); Wooley v. State, 716 N.E.2d 919, 927 (Ind. 1999) (indicating emergency room nurse was not sufficient to testify regarding standard of care for a doctor). Shidler also admits that a pharmacist is a professional. (Plaintiffs' Response 5-6) ("Plaintiff is claiming that the Pharmacist, having made an independent professional determination . . . failed to use his professional judgment." (emphasis added)). Furthermore, based on the language of both Ind. Code § 25-26-13-16(a) and the Indiana Supreme Court in Hooks SupeRx, a pharmacist must exercise reasonable care and that the standard of care is that of a reasonable pharmacist in the same or similar situation. Indiana specifically limits the standard of care to that of a pharmacist rather creating a more general demarcation such as a "reasonable person," which leads this Court to conclude that Indiana treats pharmacy as a profession. And a profession requires expert testimony to establish the standard of care. See Troutwine Estates Dev. Co., 854 N.E.2d at 902.

Furthermore, Indiana requires expert testimony with regards to others in the medical profession "[b]ecause of the complicated nature of medical diagnosis and treatment." Starks v. Vill. Green Apartments, 854 N.E.2d 411, 413(Ind. Ct. App. 2006); Boston v. GYN, Ltd., 785 N.E.2d 1187, 1190 (Ind. Ct. App. 2003). Because the pharmacy profession is complicated in

8

nature, this same general principle applies. For example, a pharmacist has extensive knowledge about medicine and its effects. He has special training on how to prepare and measure medicine. The profession is regulated by professional standards much like doctors and nurses. Further, there are stringent laws in place that set requirements on who may sell, measure, and distribute medicines to the public. All of which reasonably suggests to this Court that Indiana would consider pharmacy to be a specialized profession that requires expert testimony to establish the standard of care.[4]

In summary, even though the SupeRx pharmacist had a duty to Shidler, Shidler has failed to present any expert testimony to establish the proper standard of care for a pharmacist and how SupeRx's conduct fell below the standard of care. As a result, Shidler has failed to establish a genuine issue of fact as to whether the SupeRx pharmacist breached the applicable standard of care. SupeRx's motion for summary judgment is **GRANTED**.

### III.   CONCLUSION

Because Shidler has failed to establish the appropriate standard of care of a pharmacist with expert testimony, he has failed to establish the essential element upon which recovery is based. As a result, SupeRx's motion for summary judgment is **GRANTED** [Doc. No. 38]. The clerk is instructed to enter judgment in favor of Defendant SupeRx and to term the case.

**SO ORDERED.**

Dated this 20th Day of February, 2007.

---

[4] Even though Shidler does not make the argument, this Court also notes that the "common knowledge" exception to requiring expert testimony does not apply. The "common knowledge" exception allows a party to survive summary judgment when the complained of conduct falls so far below the standard that one does not need expertise to see that an error was committed. Whyde, 659 N.E.2d at 628. If the pharmacist had failed to properly fill the prescription, this Court could see the "common knowledge" exception as possibly being applicable. However, there is no genuine issue that the SupeRx pharmacist properly filled the prescription. Instead, Shilder is alleging that the pharmacist did not act reasonably by failing to take some affirmative action. This question is much more difficult and requires an inquiry into the standards and general practices of the profession, and it is a question that the jury could not resolve on its own without some background of the profession.

                                            <u>S/Christopher A. Nuechterlein</u>
                                            Christopher A. Nuechterlein
                                            United States Magistrate Judge